IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

ANGELA EARL WRIGHT-HINES,           )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )            No. 07-2422-MlV
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,)
                                    )
        Defendant.                  )

---

## REPORT AND RECOMMENDATION

---

Plaintiff, Angela Earl Wright-Hines ("Wright-Hines"), proceeding *pro se*, appeals from a decision of the Commissioner of Social Security ("Commissioner") denying her claims under the Social Security Act ("the Act") for disability insurance benefits under Title II of the Act, 42 U.S.C. § 401 *et seq.* and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* On appeal, Wright-Hines argues that the administrative law judge ("ALJ") failed to apply proper legal standards in making his determination. The appeal was referred to the United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.

PROPOSED FINDINGS OF FACT

A.    Procedural History

On April 29, 2004, Wright-Hines applied for SSI, and on May 6, 2004, she filed for disability insurance benefits. (R. at 13, 45.) Wright-Hines alleges that her disability commenced on December 31, 2002, when she became unable to work because of disc herniation, back pain, and depression. (R. at 29-30, 32.) Wright-Hines' claim was denied initially on November 18, 2005, and again upon reconsideration on June 10, 2005. (R. at 29-40.) Wright-Hines requested a hearing before an ALJ. She appeared and testified at a hearing before the ALJ on May 3, 2006, in Memphis, Tennessee, where she was represented by Alison T. Ryan, attorney, at the hearing. (R. at 13, 28.) On November 14, 2006, ALJ Paul Michael Stimson, issued an unfavorable decision denying benefits. (R. at 10-20.) Wright-Hines appealed the ALJ's decision to the Social Security Appeals Council ("Appeals Council"), and on April 13, 2007, the Appeals Council denied Wright-Hines' request for review of the ALJ's decision. (R. at 4-6.) Accordingly, the ALJ's decision became the Commissioner's final decision. On June 12, 2007, Wright-Hines filed the present lawsuit in this court, seeking judicial review of the ALJ's November 14, 2006 decision.

B.    Testimony at the May 17, 2006 Hearing

Wright-Hines was born on February 10, 1964, and was 42 years old at the time of the hearing. (R. at 292.) She completed the

twelfth grade of high school in resource classes but was not sure whether she received a diploma. (R. at 293-94.) She also attended college for two to three years taking business courses. (R. at 305.) She has difficulty reading and writing. (R. at 294.)

In the past fifteen years, Wright-Hines worked as a sorter for FedEx for three years, as a clerk at Juvenile Court for two to three years, as a clerk in General Sessions Court for approximately two years, for an attorney doing secretarial work, for Kroger Bakery, as a hostess for Olive Garden, and for McDonalds in housekeeping.[1] (R. at 294-297.)

Wright-Hines testified she suffers from back problems and carpal tunnel syndrome. (R. at 297-301.) She complained that her back problems prevent her from standing longer than five to ten minutes, walking further than one block, or sitting in one spot for more than five or ten minutes. (R. at 297-98.) In addition, she suffers from pain and numbness in her left leg and walks with a limp. (R. at 298-99.) The back pain also interferes with her ability to sleep. (R. at 299.) She told the ALJ that her doctor had suggested back surgery, but she had not had the operation because she was scared. (R. at 299.) Her carpal tunnel syndrome affects her ability to grip and lift objects. (R. at 300.)

Wright-Hines testified that she suffers from depression and

---

[1] The record also indicates that Wright-Hines worked as a cashier. (R. at 50.)

3

schizophrenia. (R. at 301-02.) She stated that she gets depressed every day, even to the extent that she sometimes stays in bed or in a chair all day. (R. at 302-03.) She also told the ALJ that she experienced periods of sadness and hopelessness on a regular basis, she has panic attacks, and her condition continues to worsen. (R. at 303.)

As to her daily activities, Wright-Hines testified she was limited to a little dusting and making beds sometime. (R. at 300-01.) She stated that she is unable to wash dishes because she often drops and breaks them. (R. at 301.) She also stated that she does not like to interact with people, avoids people all together, and cannot go to the store or church alone. (R. at 303-04.) Wright-Hines testified that she is unable to take care of her three children. (R. at 302.) She testified that she takes medication for her depression but that she is still depressed. (R. at 302.)

C. Medical History

Wright-Hines suffers from severe impairments of herniated nucleus pulposus, chronic pain syndrome, bilateral carpal tunnel syndrome, paranoid schizophrenia, depressive disorder NOS, and cocaine abuse. (R. at 15-16.)

Prior to her alleged onset date of disability, Wright-Hines' medical records include a nerve conduction study performed at Methodist Hospital on August 27, 1997, which was consistent with

carpal tunnel syndrome on the right side. (R. at 173-74.) An MRI of the lower spine performed at Methodist Hospital in August of 1997 was negative and showed no disc abnormality. (R. at 177.) A myelogram was performed at Baptist Hospital on November 20, 1997, but the record does not indicate the result. (R. at 202.) Another MRI of the lower spine performed at Baptist Hospital on May 1, 1999, was also negative for disc herniation. (R. at 195.)

Since her alleged onset of disability, Wright-Hines has been treated by doctors at Healthquest, Midtown Mental Health Center, the Health Loop, and St. Francis Hospital. Wright-Hines' medical records show that she was followed for depression by doctors at HealthQuest from August 15, 2003, through June 18, 2004. (R. at 101-107.) On August 15, 2003, Wright-Hines complained of depression, reduced sleep, and mood swings as a result of a number of stressors in her life including the collapse of her own business, child support issues, and problems with her teenage daughter, among others. (R. at 107.) She was prescribed Seroquil and Zoloft. (R. at 107.) On her return visit, she continued to be depressed but her sleep had improved. (R. at 106.) Her anti-depressants were increased. (R. at 106.) In September of 2003, Paxil was prescribed for continued depression. (R. at 105.) At her next visit in February 2004, she reported being drugged and raped over the holidays and that she became pregnant as a result of the rape. (R. at 104.) She appeared on February 13, 2004, for an

emergency visit to obtain a letter to procure an abortion but she did not go through with the abortion. (R. at 102-03.) In April of 2004, Hines-Wright reported that she tried to work part-time but was a nervous wreck. (R. at 102.) She also complained of physical problems due to a ruptured disc and carpal tunnel syndrome. (R. at 102.) She returned for a follow-up psychiatric visit on June 18, 2004, at which time she reported being increasingly depressed. (R. at 101.) Her medications were continued. (R. at 101.)

For approximately one year, from March 11, 2005, to February 16, 2006, after leaving HealthQuest, Wright-Hines was treated by Dr. E.Q. Mizelle at Midtown Mental Health Center on five occasions for mental illness. (R. at 215-228.) At her initial visit, Dr. Mizelle noted poor compliance by Wright-Hines with her medications since leaving HealthQuest. (R. at 223.) She acknowledged that Lexapro had been effective and had no side effects. (R. at 223.) Dr. Mizelle also noted that Wright-Hines had been hospitalized at Lakewood for ten days in August of 2004 for psychosis. (R. at 224.) During the year of treatment at Midtwon Mental Health Center, she carried a diagnosis of paranoid schizophrenia, depressive disorder NOS, treatment noncompliance, and cocaine abuse. (R. at 220.) She reported problems with auditory hallucinations beginning approximately 2001. (R. at 225, 227.) She also reported addictions to cocaine and alcohol. (R. at 220, 225.) She completed a drug rehabilitation program on February 13,

2006, and reported a two month abstinence from drugs and alcohol. (R. at 220.)   After she quit using drugs, she reported a decrease in panic attacks.   (R. at 220.)   The auditory hallucinations decreased with Risperdal.   (R. at 220.)   Her initial diagnosis included a GAF of 45 (R. at 225) which was later changed to 50 (R. at 221).   Her medications included Lexapro, Vistaril, Risperdal, Clonazepam, and Zoloft.   (R. at 219.)

During the same year, from March 11, 2005, to March 29, 2006, Wright-Hines was treated at Health Loop on several occasions.   (R. at 248-266.) She complained of anxiety attacks, tiredness, back pain, and left hand numbness.   (R. at 252, 257, 262, 266.) She reported a moderate activity level consisting of exercising two to three times week.   Her exercise included walking and cycling.   (R. at 252-53, 257.) A physical examination revealed normal results, including intact balance and gait and no skeletal tenderness.   (R. at 252, 257.)   She was referred to a neurosurgeon who recommended a nerve block and physical therapy but Wright-Hines declined.   (R. at 252.)   The records indicate no unusual anxiety or evidence of depression during this time.   (R. at 253.)

On February 23, 2006, Wright-Hines was seen at St. Francis Hospital with complaints of numbness and tingling in both hands and both feet.   (R. at 232, 234.)   A nerve conduction study was performed on both upper and both lower extremities with normal results. (R. at 235.) An x-ray was taken of her lower spine with

normal results. (R. at 236.) An MRI taken on March 7, 2006, revealed left lateral disc protrusion at L4-5 with encroachment on the neural foramen and mild degenerative disc changes at L3-4. (R. at 237.)

D.  Consultative Exams

On August 23, 2004, Dr. Paul Katz, a Disability Determination Services ("DDS") physician, performed a consultative physical exam on Wright-Hines. (R. at 108-10.) Wright-Hines reported a history of low back pain radiating down her left leg to her foot and a previous diagnosis of ruptured disc. (R. at 108.) She complained that her back pain worsens if she stands, sits, walks, or lies down for too long. (R. at 108.) On examination, her back was non-tender to palpitation, she had full range of motion in her hips and knees with no muscle wasting, her motor strength was 5/5 with "very poor effort," and straight leg raises bilaterally were negative. (R. at 108.) Dr. Katz noted that she walked with a limp which fluctuated and had crutches but that she did not seem to need them for balance or support. (R. at 108-09.) She flexed her spine 10 degrees, but he thought she could have gone further. (R. at 109.) In his opinion, her pain was out of proportion to his physical findings. (R. at 109.) Dr. Katz diagnosed low back pain. (R. at 109.)

On November 17, 2004, another DDS physician, Dr. Phillips, completed a Psychiatric Review Technique Form on Wright-Hines. (R.

at 117 -131.)  In this form, he indicated, however, he was unable to assess her psychological condition because she failed to cooperate. (R. at 131.)

On February 8, 2005, Dr. Rebecca Caperton, a DDS consultative physician, conducted a consultative psychological evaluation of Wright-Hines to evaluate her mental status.  (R. at 132-35.) Wright-Hines complained of being sad, paranoid, and anxious and experiencing poor memory and concentration.  (R. at 132.)  She reported suffering from depression since she was eighteen years old but denied any visual/auditory hallucinations or suicidal/homicidal ideations.  (R. at 132.)  She also reported that she had been addicted to cocaine for three years and was scheduled to enter a facility soon to begin treatment for both her addiction and depression. (R. at 132-33.)  Dr. Caperton noted that Wright-Hines drove herself to the appointment, she was dressed neatly, her speech was unremarkable, her psychomotor skills were not impaired, and she exhibited no indication of pain.  (R. at 132.)  Mental status examination revealed impaired short-term memory, average range of intelligence, average judgment, average fund of information, and intact reality.  (R. at 133.)  Wright-Hines told Dr. Caperton that she spends her days at home, taking care of the house and the children.  (R. at 134.)  She alleged living in an abusive relationship and reported problems in getting along with her husband.  (R. at 134.)  Dr. Caperton noted that Wright-Hines

was able to bathe and dress herself, manage the family shopping, and do all of the housework. (R. at 134.) Dr. Caperton's diagnosis was major depressive episode, recurrent, moderate; cocaine abuse; personality disorder not otherwise specified; occupational and economic problems; and a GAF of 60. (R. at 134.) She opined that Wright-Hines exhibited difficulties with concentration, attention, persistence, pace, remembering detailed information, carrying on conversations, interacting appropriately, and adapting to changes and requirements. (R. at 134.) She noted no physical limitations. (R. at 134.)

After the hearing before the ALJ, Dr. Harry Blumenfeld, a DDS physician, performed a consultative physical exam on Wright-Hines on August 30, 2006, for chronic pain in the lower back and carpal tunnel syndrome in both hands, plus he completed a medical source statement of ability to do work-related activities (physical) assessment on Wright-Hines. (R. at 267-278.) He reported that a physical examination was almost impossible because Wright-Hines complained of severe pain sitting or lying and on motion of nearly every joint in her body. (R. at 268.) Straight leg raises were negative and she had bilateral positive Tinel's signd in both hands. (R. at 268.) X-rays of her lumbar spine were within normal limits. (R. at 268.) He diagnosed her with chronic pain syndrome, bilateral carpal tunnel syndrome, and psychosis with depression. (R. at 269.)

On the medical source statement, Dr. Blumenfeld indicated that he could not evaluate her exertional limitations for lifting, carrying, sitting, pushing, and pulling because of Wright-Hines "exaggerated response to stimuli" (R. at 272-73), but that standing and walking were not affected by her impairments. (R. at 272.) Because of her prenatal status and her medications, he opined that Wright-Hines should never be allowed to climb ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. (R. at 273.) Dr. Blumenfeld indicated that Wright-Hines had no visual/communicative limitations in her ability to speak, hear, or see, no environmental limitations, and no manipulative limitations. (R. at 273-74.)

E. Residual Functional Capacity ("RFC") Assessment

On September 27, 2004, Dr. Suzanne Fletcher, a DDS physician, completed a physical RFC assessment on Wright-Hines without examination. The assessment indicated that Wright-Hines could occasionally lift fifty pounds and frequently lift twenty-five pounds. (R. at 112.) It further listed Wright-Hines as being able to stand, walk, and/or sit for a total of about six hours in an eight hour workday. (R. at 112.) It also noted that Wright-Hines had postural restraints which allowed her to only occasionally climb ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. (R. at 113.) Dr. Fletcher also indicated that Wright-Hines had no communicative limitations in her

ability to speak, no environmental limitations, no visual limitations, and no manipulative limitations. (R. at 113-14.)

On April 1, 2005, Dr. Regan, a state agency medical consultant completed a mental RFC assessment on Wright-Hines. (R. at 146 - 163.) He assessed Wright-Hines with mild restriction in her activities of daily living; moderate social limitations, moderate difficulty maintaining concentration, persistence, and pace; and having experienced on episode of decompensation. (R. at 146, 147, 160.) He opined that Wright-Hines could complete simple and low level detailed tasks and may have some but not substantial difficulty interacting effectively with the public. (R. at 148.)

E.    The ALJ's Decision

Considering the record and Wright-Hines's testimony and using the five-step disability analysis, the ALJ concluded that Wright-Hines had not been under a disability under sections 216(i) and 223(d) of the Act from December 31, 2002, her alleged onset date, through the date of his decision, November 14, 2006. (R. at 19.)

Under the first step, the ALJ found that Wright-Hines had not "engaged in substantial gainful activity since December 31, 2002, the alleged onset date." (R. at 15.) Second, the ALJ concluded that Wright-Hines suffered from the following severe impairments: herniated nucleus pulposus, chronic pain syndrome, bilateral carpal tunnel syndrome, paranoid schizophrenia, depressive disorder NOS, and cocaine abuse. (R. at 15.) Under the third step, however, the

ALJ concluded that Wright-Hines did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 17.) Accordingly, the ALJ had to then determine whether Wright-Hines retained the RFC to perform past relevant work or could adjust to other work. (R. at 17.) The ALJ found that Wright-Hines retained the RFC to lift 50 pounds occasionally and 25 pounds frequently as well as stand, walk, or sit for six hours in an eight-hour workday. (R. at 17.) He further found that she had "nonexertional postural limitations that restrict her to occasional climbing, balancing, stooping, kneeling, crouching, and crawling." (R. at 17.) Additionally, he found she suffered from "nonexertional mental imitations that restrict her to understanding, remembering, and carrying out simple and low-level detailed job instructions." (R. at 17.) The ALJ found Wright-Hines capable of performing her past relevant work as a cashier because work as a cashier requires unskilled work activity at the light exertional level which is consistent with Wright-Hines' limitations. (R. at 19.) Accordingly, the ALJ concluded Wright-Hines was not disabled. (R. at 19.)

In reaching his decision, the ALJ found Wright-Hines' subjective complaints concerning the intensity, persistence and limiting effects of her symptoms to be only partially credible. (R. at 18.) In discounting her credibility, the ALJ noted that

Wright-Hines had a history of non-compliance with treatment, that there was evidence in the record that she selectively used a cane in order to put her condition in a negative light, that her testimony regarding her daily activities was inconsistent with prior statements to medical providers and consultants, and that her alleged pain was out of proportion to any physical findings. (R. at 18.)

PROPOSED CONCLUSIONS OF LAW

In order for a claimant to receive disability benefits, he must demonstrate that he is disabled and that he became disabled prior to the date on which he was last insured. 42 U.S.C. § 423(a); *see Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Wright-Hines must, therefore, prove that she became disabled prior to December 31, 2004, the date which the ALJ found that Wright-Hines was last insured. (R. at 15.) Disability is determined by a five-step sequential analysis set forth in the Social Security Regulations. 20 C.F.R. § 416.920. First, the claimant must not be engaged in substantial gainful activity for a period of not less than twelve months. *Id.* § 416.920(a)(4)(i), (b). Second, a finding must be made that the claimant suffers from a severe impairment. *Id.* § 416.920(a)(4)(ii), (c). Third, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations in Appendix 1 to Subpart P of Part 404.

*Id.* § 416.920(a)(4)(iii), (d). If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. *Id.* § 416.920(d). If the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the residual functional capacity to return to any past relevant work. *Id.* § 416.920(a)(4)(iv), (e), (f). If the ALJ finds the claimant unable to perform past relevant work, then, at the fifth step, the ALJ must discuss whether the claimant can perform other work which exists in significant numbers in the national economy. *Id.* §§ 416.920(a)(4)(v), (g)(1), 416.960(c)(1)-(2). At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant is capable of doing other work. *Adkins v. Comm'r of Soc. Sec.*, No. 07-5132, 2007 WL 3037281, at *3 (6th Cir. Oct. 17, 2007).

On appeal, Wright-Hines specifically argues that the ALJ erred: (1) in failing to determine whether her substance abuse was a material factor to her disability as required by 20 C.F.R. §§ 4040.1535 and 416.935; (2) in determining that her impairments failed to meet or equal a listed impairment; and (3) in failing to include all of her impairments in his hypothetical question to the vocational expert.

A. <u>Standard of Review</u>

Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and

whether the Commissioner used the proper legal criteria in making the decision. 42 U.S.C. § 405(g); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). Substantial evidence is more than a scintilla of evidence, but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record taken as a whole and "must take into account whatever in the record fairly detracts from its weight." *Abbott*, 905 F.2d at 923 (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." *Barker*, 40 F.3d at 794 (quoting *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

B.   <u>Wright-Hines' Substance Abuse</u>

Wright-Hines first contends that the ALJ erred in failing to

determine whether her "substance abuse was a material factor to her disability as required by the regulation 404.1535(ii) and 416.935(ii)."  (Pl.'s Br. 3.)

In the past, the law provided for the payment of benefits to individuals who were disabled because of a dependency on alcohol, but that law has changed.  On March 29, 1996, Congress passed the Contract With America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847 (1996) ("the CWAA Act").  Section 105(b)(1) of the CWAA reshaped the definition of disability under the Social Security Act with respect to alcohol dependency.  The effect of the change was to eliminate alcoholism or drug addiction as a basis for obtaining disability insurance benefits.  The amended version of 42 U.S.C. § 423(d)(2)(C) now provides: "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  In order to determine whether an alcohol or drug addiction is a contributing factor material to the disability determination, the Commissioner must determine whether a claimant would still be disabled if she quit using alcohol or drugs.  *See* 20 C.F.R. § 404.1535(b)(1).

The implementing regulations make clear that a finding of disability is a condition precedent to the drug and alcohol

"material" determination. 20 C.F.R. §§ 404.1535(a) and 416.935(a). In other words, the drug and alcohol materiality determination is made only when the individual is first determined to be disabled and when there is also medical evidence of drug or alcohol addiction.

In this case, the ALJ found that Wright-Hines was not disabled. In doing so, he considered the effects of Wright-Hines' cocaine abuse along with her paranoid schizophrenia and depressive disorder on her activities of daily living. (R. at 18.) Because the ALJ found Wright-Hines was not disabled, he was not required to determine whether her drug and alcohol dependency was a material factor. Thus, the ALJ applied the proper legal criteria and did not err in this determination.

C. Step Three Determination - Listed Impairments

Wright-Hines contends that the ALJ erred in finding that her impairments failed to meet or equal the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically for disorders of the spine, depressive disorders, and schizophrenia. Regarding the third evaluative step, it is the claimant's burden to come forward with evidence to establish that he or she meets or equals a listed impairment. *Evans v. Sec'y of Health and Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)(per curiam).

1. *Listing 1.04 - Spinal Disorders*

Listing 1.04 for disorders of the spines provides as follows:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral facture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.

With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . . .

20 C.F.R. pt. 404, subpt P, app. 1, § 1.04.

An impairment meets a listed impairment only when it manifests the specific findings that satisfy all the criteria for the particular listing. 20 C.F.R. §§ 404.1525(d), 416.926(b). Medical equivalence must be based on medical findings supported by medically acceptable clinical and laboratory techniques. 20 C.F.R. §§ 404.1526(b), 416.926(b).

In this case, the medical evidence does not satisfy all of the criteria of Listing 1.04. There is evidence in the record that Wright-Hines suffered from a herniated nucleus pulposus, one of the spinal disorders listed in Listing 1.04. On March 7, 2006, an MRI performed at St. Francis Hospital revealed left lateral disc protrusion at L4-5 with encroachment on the neural foramen and mild degenerative disc changes at L3-4. (R. at 237.) Although Wright-Hines has established that she suffered from a herniated disc, a diagnosis of herniated disc does not equate to a finding of

19

disability under Listing 1.04 absent satisfaction of the other criteria. *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990)(per curiam). In this regard, the medical reports do not indicate "significant motor loss," nor is there any indication of "sensory loss" or "muscle weakness." On March 23, 2004, when Dr. Paul Katz examined Wright-Hines, he found her back was non-tender to palpitation, she had full range of motion in her hips and knees with no muscle wasting, her motor strength was 5/5 with "very poor effort," and straight leg raises bilaterally were negative. (R. at 108.) Dr. Blumenfeld reported in August of 2006 that a physical examination of Wright-Hines was almost impossible because Wright-Hines complained of severe pain sitting or lying and on motion of nearly every joint in her body, but he did note that straight leg raises were negative although she would only flex her spine about 10 degrees. (R. at 268.) Both Dr. Katz and Dr. Blumenfeld believed Wrigh-Hines' pain to be exaggerated in comparison to their physical findings. The records from Health Loop from March of 2005 to March of 2006 reflect normal results on physical examination, including intact balance and gait and no skeletal tenderness. (R. at 248-266.) Furthermore, none of the physicians' reports expressly state that Wright-Hines' condition met or was equal to Listing 1.04. Therefore, there is substantial evidence to support the ALJ's finding that Wright-Hines' condition did not meet or equal the criteria of Listing 1.04.

2. *Mental Disorders*

Wright-Hines also suggests in her brief, without citing to the specific Listings, that she met the criteria for Affective Disorder, Listing 12.04, and Schizophrenic Disorder, Listing 12.03, based on the fact that the ALJ determined she suffered from severe impairments of depressive disorder NOS and paranoid schizophrenia. Wright-Hines, however, does not satisfy all the criteria for these two listings. There is no medical evidence that Wright-Hines experienced marked restriction of activities of daily living or social functioning, difficulties maintaining concentration, persistence, or pace, or repeated episodes of decompensation. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.03(B), 12.04(B). Therefore, there is substantial evidence to support the ALJ's finding that Wright-Hines' condition did not meet or equal the criteria of Listings 12.03 and 12.04.

D.   Hypothetical Question to the Vocational Expert

Finally, Wright-Hines contends that the ALJ erred by failing to include all of her impairments in the hypothetical question presented to the vocational expert. (Pl.'s Br. 2, 3, 27-32.) The ALJ, however, did not present a hypothetical question to a vocational expert, nor was he required to do so. Wright-Hines confuses the Vocational Assessment prepared by Rebecca Allen, a state agency vocational expert, (R. at 50), with a hypothetical question to a vocational expert. Although the ALJ referred to

Allen's Vocational Assessment in his opinion as being consistent with his determination, he did not rely on it or present a hypothetical question to Allen. (R. at 19.) Accordingly, the ALJ did not err by failing to include all of Wright-Hine's impairments in a hypothetical question to a vocational expert.

CONCLUSION

For the foregoing reasons, it is recommended that the Commissioner's decision be affirmed.

RESPECTFULLY SUBMITTED this 30th day of April, 2008.


<u>s/ Diane K. Vescovo</u>
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE